UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

DAVID CARMONA,
MARCO RUIZ OCHOA,
MOSES VALDEZ,
JUAN ARELLANO,
DAVID BREND, and
GUSTAVO RODRIGUEZ,

Defendants.

- - - - - - - - - - - - - - - - - - - x

**SEALED INDICTMENT**

22 Cr. ___ (___)

22 CRIM 551

**COUNT ONE**

(Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

**THE ICOMTECH SCHEME**

1. At all times relevant to this Indictment, IcomTech ("IcomTech," the "IcomTech Scheme" or the "Scheme") was a purported cryptocurrency mining and trading company that promised to earn its victim-investors ("Victims") profits in exchange for their purchase of purported cryptocurrency-related investment products, such as "packages" of cryptocurrency that the company claimed to be trading at a profit and "leases" on cryptocurrency "mining" machines that the company claimed were being used to generate cryptocurrency that the company would trade at a profit (collectively, the "Investment Products").

IcomTech's founder, DAVID CARMONA, the defendant, and at least certain promoters ("Promoters"), including, among others, MARCO RUIZ OCHOA, MOSES VALDEZ, JUAN ARELLANO, and DAVID BREND, the defendants, falsely promised Victims, among other things, guaranteed daily returns on their investment, and that Victims would double their investment within six months. In fact, as described in greater detail below, IcomTech was a Ponzi scheme. CARMONA and IcomTech's other Promoters were not trading or mining cryptocurrency. Instead, CARMONA, OCHOA, VALDEZ, ARELLANO, and BREND, among other IcomTech Promoters, used Victim funds to pay other Victims, to further promote the Scheme to other Victims, and on personal expenditures. Although some Victims received small payouts from IcomTech, most Victims lost their entire investments.

2.  In or about fall 2018, DAVID CARMONA and MARCO RUIZ OCHOA, the defendants, began advertising IcomTech to potential investors and promoters as a multilevel marketing ("MLM") business in the cryptocurrency industry. To perpetrate the Scheme, CARMONA and OCHOA recruited Promoters, including, among others, MOSES VALDEZ, JUAN ARELLANO, and DAVID BREND, the defendants. IcomTech's Promoters, including CARMONA, OCHOA, VALDEZ, ARELLANO, and BREND, recruited Victims to purchase

IcomTech's Investment Products – often for thousands of dollars – by representing that IcomTech invested Victims' money in cryptocurrency mining and trading, and then shared the profits from those activities with Victims through passive, guaranteed returns on any Investment Product purchased. CARMONA, OCHOA, VALDEZ, ARELLANO, and BREND represented that IcomTech was principally mining and trading Bitcoin, and promised Victims, among other things, guaranteed daily or weekly returns on their investments and/or that Victims would double their money within six months.

3. In or about 2018, DAVID CARMONA, the defendant, hired GUSTAVO RODRIGUEZ, the defendant, to build IcomTech's website and online portal (the "Online Portal"), where, as described below, Victims were provided with personal accounts. In addition to developing IcomTech's online presence, RODRIGUEZ also advised CARMONA regarding how to structure IcomTech's compensation plan and Investment Products. For example, RODRIGUEZ advised CARMONA on where CARMONA should set the purported daily returns on Victims' investment packages and on the size of the investment packages that CARMONA should offer for sale. CARMONA also consulted with MARCO RUIZ OCHOA, the

defendant, about how to structure IcomTech's compensation plan and Investment Products.

4. From in or about mid-2018 until in or about the end of 2019, DAVID CARMONA, MARCO RUIZ OCHOA, MOSES VALDEZ, JUAN ARELLANO, and DAVID BREND, the defendants, and others known and unknown, traveled throughout the United States, and internationally, where they hosted lavish IcomTech promotional events and more intimate small community presentations, chat groups, and videoconferences aimed at convincing Victims to purchase IcomTech Investment Products. During the larger scale promotional events, IcomTech Promoters would present the IcomTech Investment Products and attendant compensation plan, encourage Victims to invest as a means of achieving financial freedom, and boast about the amount of money they were earning through IcomTech. Promoters would often arrive at these events in expensive cars and wear luxury clothing as a way of exhibiting their purportedly legitimate success. The atmosphere of the events was festive and designed to generate excitement about IcomTech. At least one such event, which was attended by, among others, CARMONA and OCHOA, was held in part in New York, New York in or about January 2019.

5. Victims purchased Investment Products from Promoters using cash, checks, and wire transfers. After the purchase was made, the Promoter would provide the Victim with access to an individual account on the Online Portal, where the Victim could log on and monitor their investment and the purported gains on their investment, and, at least in theory, withdraw their earnings.

6. In fact, as the defendants knew, there were no real gains because there were no true investments. Promoters' representations about IcomTech engaging in cryptocurrency trading and mining on Victims' behalf, and their promises of guaranteed returns on investment, were false and misleading because IcomTech engaged in no cryptocurrency trading or cryptocurrency mining. Instead, DAVID CARMONA, MARCO RUIZ OCHOA, MOSES VALDEZ, JUAN ARELLANO, and DAVID BREND, the defendants, used Victims' money to make payouts to other Victims, enrich themselves, and to finance further recruitment of Victims through, among other things, more promotional events where they would repeat the same misrepresentations about IcomTech's Investment Products and Victims' potential earnings under the IcomTech compensation plan. For example, bank records of CARMONA, OCHOA, VALDEZ, and BREND all show these defendants

withdrawing in cash tens of thousands of dollars collected from Victims; spending Victim funds on event venues, travel, luxury goods; and/or spending Victim funds on personal expenditures.

    7. In or about September 2018, DAVID CARMONA and MARCO RUIZ OCHOA, the defendants, entered into a contract on behalf of IcomTech to purchase cryptocurrency mining equipment from a legitimate supplier of such equipment (the "Mining Equipment Supplier"). After entering into the agreement, CARMONA, OCHOA, and other IcomTech Promoters began touting IcomTech's purported investment in such hardware sourced from the Mining Equipment Supplier as a means of generating interest among Victims to invest in the Scheme. In reality, IcomTech did not meet its payment obligations to the Mining Equipment Supplier and never actually received any cryptocurrency mining hardware. Nevertheless, CARMONA and OCHOA continued to promote IcomTech's purported investment with the Mining Equipment Supplier, even after representatives of the Mining Equipment Supplier threatened CARMONA and OCHOA with legal action. For example, in or about January 2019, OCHOA sent CARMONA a message from a representative of the Mining Equipment Supplier accusing OCHOA of using the Mining Equipment Supplier's "brand for legitimacy in marketing to recruit." Further, in text messages

exchanged between CARMONA and GUSTAVO RODRIGUEZ, the defendant, in or about July and August 2018, CARMONA admitted that his negotiations with the Mining Equipment Supplier were just for appearances and that he was just "using them." In response, RODRIGUEZ warned CARMONA that this would only work for a limited time, before the Mining Equipment Supplier found out, but in the meantime CARMONA could earn millions of dollars.

       8.   At least as early as in or about August 2018, Victims began complaining to Promoters, including DAVID CARMONA and MARCO RUIZ OCHOA, the defendants, about, among other things, having difficulty withdrawing money from the IcomTech Online Portal, their accounts not being credited appropriately after they paid into the Scheme, and their accounts not reflecting the earnings they believed they were entitled to under the IcomTech compensation plan. After MOSES VALDEZ, JUAN ARELLANO, and DAVID BREND, the defendants, began promoting the Scheme, they began receiving similar complaints. CARMONA, OCHOA, VALDEZ, ARELLANO, and BREND typically responded to Victims' complaints with excuses about technical difficulties, alleged hacks, and other mishaps that would delay withdrawal of Victims' funds. Despite these complaints, CARMONA, OCHOA, VALDEZ, ARELLANO, and BREND continued to promote IcomTech and accept Victims' investments.

9. In or about summer 2019, as more and more Victims began to complain about not being able to withdraw their purported earnings from the Online Portal, which were denoted in Bitcoin, IcomTech's Promoters, including DAVID CARMONA, MOSES VALDEZ, JUAN ARELLANO, and DAVID BREND, the defendants, told Victims, in substance and in part, that IcomTech would no longer be crediting Victims' accounts with Bitcoin, but with a proprietary cryptocurrency known as "Icoms." IcomTech's Promoters led Victims to believe that Icoms, which IcomTech initially offered for sale for approximately a few cents, could eventually reach a value of approximately $1 each or more once they became available on major cryptocurrency exchanges and accepted by companies for payment for goods and services. In reality, Icoms were essentially worthless, peaking at approximately $0.01 in or about the fall of 2019 on external exchanges and falling to a fraction of a penny thereafter.

10. In or about fall 2019, spurred in part by the switch to Icoms, the number of Victim complaints about IcomTech began to grow significantly. Publicly, DAVID CARMONA, MOSES VALDEZ, JUAN ARELLANO, and DAVID BREND, the defendants, continued to make excuses and to encourage Victims to continue investing in the Scheme. In some instances, VALDEZ and BREND

responded to Victims' complaints by removing Victims from IcomTech chat groups that VALDEZ and BREND controlled. VALDEZ also threatened to withhold payments to Victims if they did not first execute a litigation waiver.

11. Privately, however, some Promoters discussed the Scheme's potential collapse because new money was not coming into the Scheme, expressed concern about potential regulatory exposure, and otherwise signaled their awareness that they had done something illegal by taking Victim money. For example:

a. In or about September 2019, during a conference call with several Victims, a Victim ("Victim-1") confronted DAVID BREND, the defendant, who had recruited Victim-1 into IcomTech, about Victim-1's losses in IcomTech. During the call, BREND admitted, in substance and in part, that he knew IcomTech was a scam.

b. In or about early October 2019, JUAN ARELLANO, the defendant, sent DAVID CARMONA, the defendant, an audio recording via text message expressing concerns, in substance and in part, about being brought in front of the United States Securities and Exchange Commission because he (ARELLANO) and CARMONA were playing with people's money.

12. By in or about the end of 2019, IcomTech had ceased making payments to Victims, and its chief promoters, including DAVID CARMONA, MARCO RUIZ OCHOA, MOSES VALDEZ, JUAN ARELLANO, and DAVID BREND, the defendants, had stopped promoting the Scheme and, in some instances, stopped responding to Victims altogether. Most Victims lost their entire investment.

**STATUTORY ALLEGATIONS**

13. From at least in or about May 2018 through in or about December 2019, in the Southern District of New York and elsewhere, DAVID CARMONA, MARCO RUIZ OCHOA, MOSES VALDEZ, JUAN ARELLANO, DAVID BREND, and GUSTAVO RODRIGUEZ, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud in violation of Title 18, United States Code, Section 1343.

14. It was a part and an object of the conspiracy that DAVID CARMONA, MARCO RUIZ OCHOA, MOSES VALDEZ, JUAN ARELLANO, DAVID BREND, and GUSTAVO RODRIGUEZ, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit

and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

(Title 18, United States Code, Section 1349.)

**FORFEITURE ALLEGATIONS**

15. As a result of committing the offense alleged in Count One of this Indictment, DAVID CARMONA, MARCO RUIZ OCHOA, MOSES VALDEZ, JUAN ARELLANO, DAVID BREND, and GUSTAVO RODRIGUEZ, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

**Substitute Assets Provision**

16. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due

diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853 (p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

(Title 18, United States Code, Sections 981 & 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

DAMIAN WILLIAMS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**- v. -**

**DAVID CARMONA, MARCO RUIZ OCHOA, MOSES VALDEZ, JUAN ARELLANO, DAVID BREND, and GUSTAVO RODRIGUEZ,**

**Defendants.**

**SEALED INDICTMENT**

22 Cr. ___ (___)

(18 U.S.C. § 1349.)

[signature]
Foreperson

DAMIAN WILLIAMS
United States Attorney.

10/13/22
(CA)

SEALED INDICTMENT FILED W/ ARREST WARRANTS

KH PARKER
USMJ